```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
```
JOSEPH FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS F. CORBETT, ANTHONY D'AQUILA,
THOMAS GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCA, and ANTHONY
PIROZZI, as Trustees and Fiduciaries of the Local
282 Welfare Trust Fund, the Local 282 Pension
Trust Fund, the Local 282 Annuity Trust Fund, the
Local 282 Job Training Trust Fund, and the Local
282 Vacation and Sick Leave Trust Fund,
         Plaintiff(s),     **REPORT AND**
                  **RECOMMENDATION**
   -against-         CV 11-940(ADS) (WDW)

BD HAULERS, INC., NICOLENA TRUCKING,
and FRANK GILLETTE,
         Defendant(s).
```
----------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

  Before the court on referral from District Judge Spatt is the plaintiff Trustees' motion for default judgment (DE[8]) and the award of damages if the motion is granted. DE[14]. I recommend that the motion be granted and default judgment entered as follows: that the court (1) grant judgment against BD Haulers and Frank Gillette, jointly and severally, in the total amount of $165,503.81 for unpaid contributions, interest, liquidated damages, attorney's fees and costs, plus daily interest and liquidated damages, each at the rate of $43.27 per day totaling $86.54 per day, commencing July 22, 2011; (2) order BD Haulers to submit to audit for the period from July 15, 2008 through the audit date and, together with Gillette, pay any delinquencies identified by the audit plus attendant damages, to be applied for separately after the audit; (3) grant judgment against Nicolena in the total amount of $14,863.24 for unpaid contributions, interest, liquidated damages, attorney's fees and costs, plus additional daily interest and liquidated damages, each at the rate of $2.43 per day, totaling $4.86 per day,

commencing July 22, 2011; and (4) order Nicolena to submit to audit for the period from January 30, 2009 through the audit date and to pay any delinquencies identified by the audit plus attendant damages, to be applied for separately after the audit. I recommend that the audit fees sought by the plaintiffs not be awarded.

## BACKGROUND

Defendant BD Haulers is a party to the Metropolitan Truckers Association & Independent Truckers Contract with the Local 282 Union for the period of July 1, 2006 through June 30, 2009 ("BD Haulers CBA"). Individual defendant Frank Gillette signed the BD Haulers CBA in his capacity as BD Haulers' president. DE[9], Cody Decl. ¶7 & Ex. B. Defendant Nicolena is a party to the Metropolitan Truckers Association & Independent Truckers Contract with the Local 282 Union for the period of July 1, 2006 through June 30, 2009 ("the Nicolena CBA", together with the BD Haulers' CBA, "the CBAs"). *See* Cody Decl., ¶9 & Ex. C. Non-party Christine Gillette, wife of Frank Gillette, signed the Nicolena CBA in her capacity as Nicolena's president.

The CBAs provide that the Trust Agreement, the Funds' governing document, is part of the CBAs and that the employers and union "agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreement." Cody Decl., ¶11 & Exs. B & C. The Trust Agreement requires the employer companies to submit remittance reports and contributions to the Funds on behalf of those employees covered by the CBAs and to submit to periodic audits and to pay any delinquencies revealed by the audits. *Id*., ¶¶12 & 15 & Ex. A. Pursuant to the audit provision, the Trustees sought to audit BD Haulers for the period commencing July 15, 2008 and Nicolena for the period commencing January 30, 2009, but the companies fialed to submit to audit. *Id.* ¶¶17-20.

2

On February 25, 2010, the plaintiffs filed this action to compel the audits and to collect any delinquencies identified by the audits, plus interest, liquidated damages and attorney's fees and costs, pursuant to Section 502(g)(2) of ERISA. The complaint also included claims to collect estimated contributions and attendant damages based on estimate provisions set out in the Trust Agreement. The complaint also contains claims of individual liability against Frank Gillette, alleging that Gillette is a controlling corporate official of BD Haulers who knowingly committed fraud against the Funds by creating and orchestrating a scheme to underreport the amount of hours worked by drivers in covered employment. They claim that, in his capacity as president of BD Haulers, he caused drivers to be paid in cash and retained third-party trucking companies to perform covered trucking work on behalf of BD Haulers. He allegedly failed to report these hours worked to the Funds on the remittance reports he signed as President, in violation of the BD Haulers CBA. The Funds allege that they relied to their detriment on the material false representations and omissions caused by Gillette and that he is jointly and severally liable with BD Haulers for any contributions due and owing from BD Haulers.

All defendants were duly served, but none of them answered, and the Clerk entered their defaults on July 18, 2011. The motion for default judgment was served on the defendants, filed on August 8, 2011, and referred to me on January 26, 2012. The defendants have not opposed the motion

### DISCUSSION

<u>Default Judgment Standards</u>:

Entry of a default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party." *Dae Woo Kim v. City of New York*, 1990 U.S.

Dist. LEXIS 7137, at *5 (S.D.N.Y. June 11, 1990) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).  Here, all three defendants have failed to answer the Complaint and are therefore non-responsive parties.

The allegations in the complaint sufficiently allege the claims under ERISA and also sufficiently allege Gillette's status as a controlling corporate official and the elements of fraud. Thus, I recommend that default judgment be entered against each of the defendants on all of the claims asserted in the Complaint.

Default Damages Standards:

A default constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.  *See Delucia v. RTD Strategies, Inc.* 2009 WL 346972, *2 (E.D.N.Y. Feb. 4, 2009)(citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)).  A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  And, the movant must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound,* 973 F.2d at 159.  An evidentiary hearing is not required so long as there is a basis for the damages awarded.  *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted).  Detailed affidavits and other documentary evidence can provide this basis.  *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991).

Here, the plaintiffs have submitted a declaration from Theresa Cody, a senior member of

the Collections Department at the Local 282 Trust Funds (DE[9]), along with a declaration from Benedetto Umbra, a Business Agent for Local 282 (DE[10]). They have also submitted a declaration from their attorney, Michael S. Adler (DE[11]), along with the relevant documents that support their claims. The defendant has not submitted any opposition. Accordingly, a hearing on the issue of damages is not necessary.

29 U.S.C. §1132(g)(2) provides that when a judgment in favor of a plan is entered pursuant to section 1145, the court shall award the plan: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not to exceed 20 percent of the amount of unpaid contributions; (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate.

Estimated Delinquent Contributions:

As noted *supra*, the CBAs oblige the defendant companies to submit to periodic audits and to pay any delinquencies revealed by the audits. They have not submitted their books and records for audit despite repeated requests. Under the Trust Agreement, if an employer refuses to submit to an audit, the Trustees have a right to estimate the amount of contributions due. Here, the Trustees estimated the amount of contributions owed based on estimate formulas in the Trust Agreement and explained by the plaintiffs in their supporting papers. *See* DE[12] Mem. in Supp. at 6-7 and citations to the record therein. The plaintiffs estimated that BD Haulers owes $87,738.91 in contributions for the period from July 15, 2008 to June 30, 2009 and that Nicolena owes $4,935.22 in contributions for the period from January 30, 2009 through June 30, 2009. *See* Cody Decl., ¶¶32 & 38 and Exs, E & H. I recommend that the plaintiffs be awarded those

amounts.

Interest:

For contribution obligations accruing on or after November 1, 2003, the Trust Agreement, as amended, provides for interest at the rate of 1½% per month, or 18% per year. *See* Cody Decl. ¶¶40-41 & Ex. A, tenth unnumbered page after page 51; *see also LaBarbera v. David Liepper and Sons, Inc.,* 2006 WL 2423420, *3 (E.D.N.Y. July 6, 2006)(applying 1½% interest per month under same provision). As to BD Haulers, the total amount of interest due through July 21, 2011 is $35,892.21, with additional daily interest of $43.27 from July 22, 2011 through the date of payment. Cody Decl. ¶¶44 & 45. I recommend an award of those amounts.

As to Nicolena, the total amount of interest due through July 21, 2011 is $1,973.82, with additional daily interest of $2.43 from July 22, 2011 through the date of payment. *See* Cody Decl., ¶¶47 & 48. I recommend an award of those amounts.

Liquidated Damages:

Pursuant to 502(g)(2)(c) of ERISA, 29 U.S.C.§1132(g)(2)(c) and the Trust Agreement, liquidated damages are to be awarded in an amount equal to the greater of interest on the unpaid contributions or twenty percent of unpaid contributions. Cody Decl. ¶39, Ex. A at 31. As to BD Haulers, plaintiffs have opted to receive an amount equal to the interest owing, or $35,892.21. Thus, they should be awarded $35,892.21 in liquidated damages.

They also seek additional liquidated damages to accrue at the rate of $43.27 per day. In a previous Report and Recommendation, where the plaintiffs sought liquidated damages based on twenty percent of unpaid contributions, I denied the request for additional daily liquidated damages, noting that "the plaintiffs have pointed to no basis, either in the CBAs, the Trust

6

Agreement, or caselaw that would allow further accrual of liquidated damages after the threshold award of such damages, especially where the damages are based on a percentage of unpaid contributions, and not on interest. If such support exists, they may file supplemental papers supporting the award they seek and I will supplement this Report." *Ferrara v. Marsani,* CV 10-3442 (JS) (E.D.N.Y. Mar. 11, 2011). They did not seek to supplement their papers in that case and the Report and Recommendation was adopted by Judge Seybert with that ruling intact.

In a subsequent Report and Recommendation, where the liquidated damages sought were equal to the amount of interest, I recommended, without discussion, an award of liquidated damages to accrue on a daily basis. *Ferrara v. Island Logistics*, CV 10-6019 (ADS) (E.D.N.Y. Dec. 19, 2008). The rationale for the differing recommendations is that if daily liquidated damages were awarded where the plaintiffs have opted for an amount equal to twenty percent of the unpaid contributions - a fixed sum- the overall award would exceed the twenty percent of the unpaid contributions, in contravention of the statute. If the liquidated damages are based on interest, however, that number changes as daily interest accrues, and it would appear not to violate the statute to award daily accruing liquidated damages. Thus, I recommend an award of $43.27 to accrue daily as liquidated damages.

As to Nicolena, the plaintiffs have also chosen liquidated damages equal to the interest, and I recommend an award of $1,973.82 in liquidated damages, with daily accrual of $2.43.

Audit Fees:

The plaintiffs also seek $350 in audit fees. Here, there was no outside audit of the books and records because CFI did not allow one, but the plaintiffs rely on a provision of the Trust Agreement that awards "Auditor's fees . . . [of] $350, or such other amounts as the Trustees in

7

their discretion shall apply . . . in all cases in which . . . collection of the Employer's delinquent contributions *reported by the audit* is referred to the Funds' attorney." See Cody Decl., Ex. A at 30-31 (emphasis added). The provision appears to require that an audit be performed and, inasmuch as there was no audit here, only the estimation of the amounts owing conducted by Union officials, the $350 should not be awarded. If the plaintiffs would like to supplement their application with support for the award of audit fees on a claim for estimated contributions, they may do so.

Attorney's Fees and Costs:

ERISA requires an award of attorney's fees and costs upon a determination that an employee benefit plan is entitled to judgment for unpaid contributions. 29 U.S.C. §1132 (g)(2)(D). When assessing the reasonableness of legal fees, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. *Id.* Reasonable hourly rates in attorney fee awards are determined with reference to a number of factors, including but not limited to those factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).[1] *See Arbor Hill*, 522 F.3d at 186-87, 190. Those factors are to be considered

---

[1] The *Johnson* factors, as articulated by the court in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the

8

within the context of the relevant legal "community," traditionally defined as "the district where the district court sits." *Arbor Hill,* 522 F.3d at 190 (internal citation omitted).

Here, the plaintiffs seek $7,325.50 in attorneys fees, based on charges of $370 per hour for 0.8 hours of partner time, $375 per hour for 9.9 hours of senior associate time, $275 for 6.4 hours of associate time, $110 per hour for 9.9 hours of paralegal time and $90 per hour for 5.2 hours of paralegal time. Adler Decl. ¶¶18-20 & Ex. C. I find that the rates are reasonable for ERISA work in the Eastern District and that the number of hours expended is also reasonable. Thus, I recommend an award of the amount sought.

They also seek costs in the amount of $4,635.46, an unusually high number for ERISA applications such as this one. The costs consist of a court filing fee of $350, $355.71 for postage, telephone calls, photocopies, research and ground transportation, and $3,929.75 for service of process on the three defendants. *See* Adler Decl., ¶¶21-31 & Ex. D. The very high service costs resulted, the plaintiffs report, from the defendants' attempts to evade service, and actually reflect a 30% discount given to the plaintiffs by the process serving company. *Id.*, ¶21, n.1. I recommend that the plaintiffs be awarded the amounts sought as costs - $4,635.46. The attorney's fees and costs shall be paid equally by the two corporate defendants, with Gillette, as recommended *infra*, jointly and severally liable for BD Haulers' share.

Joint and Several Liability of Frank Gillette Based on Fraud Claim:

The defendants argue that the Second Circuit has held that a controlling corporate official

---

case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 522 F.3d at 186, n.3 (citing *Johnson,* 488 F.2d at 717-19).

who defrauds, or conspires to defraud, a benefit fund of ERISA contributions is individually liable for such contributions. DE[12] Mem. in Supp. at 12 (citing *Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund, and Annuity Fund v. Lollo,* 148 F.3d 194, 195-96 (2d Cir. 1998)). An individual is not liable for corporate ERISA obligations solely by virtue of his or her role as officer, shareholder, or manager, but personal liability can be established where the claimant shows that: (1) the individual is a controlling corporate official and (2) the elements of a fraud claim are established. *Lollo*, 148 F.3d at 195; *see also Finkel v. Frattarelli Bros., Inc.,* 2008 WL 2483291, at *13 (E.D.N.Y. June 17, 2008).

A.) Gillette's Status as Controlling Corporate Official

To determine whether an individual is a controlling corporate official, courts look to the individual's "actual role in the company's affairs and relationship to the company's wrong-doing." *Bourgal v. Robco Contracting Enters., Ltd.,* 969 F. Supp. 854, 864 (E.D.N.Y. 1997); *Frattarelli Bros., Inc.,* 2008 WL 2483291, at *13. Here, Gillette signed the BD Haulers CBA, noting his title as president of the company, and he signed the remittance reports submitted to the Funds, repeatedly noting his title as president. Cody Decl., Ex. B at 24 and Ex. D; Complaint, ¶¶ 11,13, 27-31. These acts, the plaintiffs argue, permitted the fraud committed on the Funds to happen in that the remittance reports signed by Gillette deliberately failed to include reference to the BD Haulers employees who were paid in cash, employees performing covered work as reflected on Hired Truck Reports, or third party trucking companies, on whose drivers' behalf contributions were due for work performed. *See* DE[10], Umbra Decl., annexing as Ex. A BD Haulers' records reflecting trucking work performed). Such conduct, they urge, is sufficient to render Gillette a "controlling corporate official." *See* DE[12] at 13 (citing *Robco*, 969 F. Supp. at

10

858, 864 (finding spouse who signed remittance reports a controlling corporate official even though she relied exclusively on information given to her by others). I agree that Gillette's signatures as president of BD Haulers, both on the CBA and on the remittance reports is sufficient to classify him as a controlling corporate official.

B.) The Undisputed Facts Establish Fraud

The applicable elements of a fraud claim are: (1) a material false representation or omissions of existing fact, (2) knowledge of the falsity, (3) an intent to defraud the Funds, (4) reasonable reliance on the part of the Funds, and (5) damages. *See Lollo,* 148 F.3d at 196; *Robco*, 969 F. Supp. at 864. Here, the Complaint sets forth sufficient allegations to make out those elements, and they are deemed admitted by the defendants' defaults. Further, the allegations meet the heightened pleading standards for fraud claims, which require that, in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The remittance reports that failed to disclose required information constitute false representations or omissions. When Gillette signed the reports, he was aware of their falsity. The Trustees reasonably relied on the remittance reports to their detriment, which was exacerbated by BD Haulers' failure to provide an audit of its books and records. These acts by Gillette caused damages to the Funds, which were deprived of the contributions to which they were entitled. I recommend that because the Funds reasonably relied on the fraudulent reports and have been damaged by their reliance, Gillette should be held personally liable for his fraudulent conduct, and should be held jointly and severally liable for all amounts due by BD Haulers in this action.

<u>The Plaintiffs are Entitled to an Audit</u>:

As noted, the Companies were each required to submit to audit pursuant to the CBAs and Trust Agreement. The plaintiffs argue that an award of money damages notwithstanding, they are also entitled to an order directing the companies to submit to audit to determine the correct amount of contributions due. I agree and recommend that an order issue requiring the companies to submit for audit and present their books and records for the relevant periods. Should the audits be conducted and reveal additional contributions owed, the plaintiffs may supplement their demands by application to this court.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Plaintiffs' counsel is directed to serve a copy of this Report on the defendants by regular mail, and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
January 31, 2012

      /s/ William D. Wall
      WILLIAM D. WALL
      United States Magistrate Judge